**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SIERRA CLUB ) | |
| 85 Second Street, 2ⁿᵈ Floor ) | |
| San Francisco, CA 94105 ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civ. No. |
| v. ) | |
| ) | |
| REGINA MCCARTHY, in her official capacity as ) | |
| Administrator of the United States Environmental ) | |
| Protection Agency ) | |
| Ariel Rios Building ) | |
| 1200 Pennsylvania Avenue, N.W. ) | |
| Washington, DC 20460 ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## I.     INTRODUCTION

1.     The Administrator of The United States Environmental Protection Agency

("Administrator" or " EPA") has failed to perform her non-discretionary duty to grant or deny a

petition filed by Sierra Club on July 28, 2014 (hereinafter "Petition"), asking EPA to object to

the air pollution operating permit (hereinafter "the Permit") issued by the New Hampshire

Department of Environmental Services ("NH DES") under Title V of the Clean Air Act for

Public Service Company of New Hampshire's ("PSNH") Schiller Station.  *See* 42 U.S.C. §

7661d(b)(2) (authorizing such petitions).

1

2.     Although more than 60 days have passed, the EPA Administrator has not granted or denied Sierra Club's Petition, in contravention of a mandatory 60-day deadline for action.  42 U.S.C. § 7661d(b)(2).  She is, therefore, in violation of her nondiscretionary duty under the Clean Air Act.  Accordingly, Sierra Club seeks a declaration that the Administrator is in violation of the Clean Air Act and an order compelling the Administrator to grant or deny Sierra Club's Petition.

## II.     JURISDICTION

3.     The instant action arises under the Clean Air Act, 42 U.S.C. § 7661d(b).  This Court has jurisdiction over Sierra Club's claims pursuant to 42 U.S.C. § 7604(a) and 28 U.S.C. §§ 1331, 1361.  The relief requested by Plaintiffs is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 1361, 2201, and 2202.

## III.     NOTICE

4.     By certified letter dated September 29, 2014, Sierra Club provided the Administrator with written notice of Sierra Club's claim concerning EPA's failure to take action on the Petition and of Sierra Club's intent to bring suit to remedy this Clean Air Act violation.  Sierra Club provided notice pursuant to 42 U.S.C. § 7604(b) and 40 C.F.R. §§ 54.2, 54.3.  A copy of this notice is provided as Exhibit A to this Complaint.

## IV.     VENUE

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e)(1).  A substantial part of the events or omissions giving rise to Sierra Club's claim occurred in the District of Columbia.  Defendant Regina McCarthy is an officer of the United States, sued for acts and omissions in her official capacity, and her official residence is in the District of Columbia.  In addition, EPA has its principal office in the District of Columbia.

## V.    PARTIES

6.      Sierra Club is the oldest and largest grassroots environmental group in the United States, with over 621,000 members nationally, including over 3,800 members in New Hampshire, and over 3,900 members in Maine.  Sierra Club's mission is to protect and enhance the quality of the natural and human environment, and its activities include public education, advocacy, and litigation to enforce environmental laws.  Sierra Club and its members are greatly concerned about the effects of air pollution on human health and the environment and have a long history of involvement in activities related to air quality.

7.      Sierra Club is a "person" within the meaning of 42 U.S.C. § 7602(e).  As such, Sierra Club may commence a civil action under 42 U.S.C. § 7604(a).

8.      Sierra Club has members in New Hampshire and Maine whose health, economic, aesthetic and environmental interests have been, are being, and will be adversely affected by the EPA acts and omissions complained of herein.  Sierra Club members live, raise their families, work, attend school, travel, and recreate in areas where they are exposed to dangerous air pollutants emitted from Schiller Station.  Such air pollutants, which include sulfur dioxide and particulate matter, are associated with a variety of adverse effects on human health and impairment of visibility and damage to wildlife and vegetation.  The Permit upon which Sierra Club's Petition is based allows Schiller Station to release such air pollutants, thereby threatening the health of Sierra Club members and their use and enjoyment of the air, environment, wildlife, scenery, and outdoor views adversely impacted by such pollutants.  The Administrator's acts and omissions complained of herein cause injury to Sierra Club members by threatening their health and welfare, and by denying them measures and procedures provided under the Clean Air Act to protect their health and welfare from air pollution in places where they live, work, recreate, and

3

conduct other activities.  The health, recreational, aesthetic, organizational, and procedural interests of Sierra Club and its members have been and continue to be adversely affected by the EPA acts and omissions complained of herein.

9.     Sierra Club's interests and its members' interests have been, are being, and will continue to be, harmed by EPA's failure to act on Sierra Club's Petition for objection to the Permit issued to Schiller Station.  EPA's failure to respond to Sierra Club's Petition creates doubt and concern for Sierra Club members about whether the Schiller Station Permit complies with the requirements of the Clean Air Act and protects them from exposure to pollutants to the extent required by law.

10.     The acts and omissions of EPA alleged herein further deprive Sierra Club and its members of procedural rights and protections to which they are entitled.  During the permitting process for Schiller Station, Sierra Club provided comments critical of the Permit's terms and limits.  Subsequently, Sierra Club petitioned EPA to object to the issuance of the Permit. The Clean Air Act gives Sierra Club a procedural right to a timely decision on its Petition.  EPA's failure to take action on Sierra Club's Petition prevents Sierra Club and its members from challenging an unfavorable EPA decision or from benefiting from a favorable decision on the Petition.

11.     The Clean Air Act violations alleged in this Complaint have injured and continue to injure the interests of Sierra Club and its members.  Granting the relief requested in this lawsuit would redress these injuries.

12.     Regina McCarthy is the Administrator of the EPA.  The Administrator is responsible for implementing the Clean Air Act, including the requirement to grant or deny Sierra Club's Petition within 60 days.  Regina McCarthy is sued in her official capacity.

4

## VI.   <u>LEGAL BACKGROUND</u>

13.     The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1).  To help meet this goal, the 1990 amendments to the Clean Air Act created the Title V permit program, an operating permit program that applies to all major sources of air pollution.  *See* 42 U.S.C. §§ 7661-7661f.

14.     Major sources of air pollution must obtain a valid Title V operating permit, which records applicable air pollution control requirements in a single document.  *See* 42 U.S.C. §§ 7661a(a), 7661c(a).

15.     The Clean Air Act provides that the EPA Administrator may approve state programs to administer the Title V permitting program with respect to sources within their borders.  *See* 42 U.S.C. § 7661a(d).  The Administrator fully approved New Hampshire's administration of its Title V permit program in 2001.  *See* Clean Air Act Final Approval of Operating Permits Program; State of New Hampshire (Direct Final Rule), 66 Fed. Reg. 48,806 (September 24, 2001).

16.     Before a state with an approved Title V permit program may issue a Title V permit, the state must forward the proposed Title V permit to EPA. 42 U.S.C. § 7661d(a)(1)(B). EPA then has 45 days to review the proposed permit.  42 U.S.C. § 7661d(b).  EPA must object to the issuance of the permit if EPA finds that the permit does not comply with all applicable provisions of the Clean Air Act. 42 U.S.C. § 7661d(b)(1).

17.     After EPA's 45-day review period expires, "any person may petition the Administrator within 60 days" to object to the Title V permit.  42 U.S.C. § 7661d(b)(2).

18.     The Clean Air Act requires that "[t]he Administrator shall grant or deny such petition within 60 days after the petition is filed."  42 U.S.C. § 7661d(b)(2).

19.     If EPA objects to a permit, the permitting authority may not issue the permit

unless it is revised.  42 U.S.C. § 7661d(b)(3).  If the permitting authority has issued a permit

prior to receipt of an objection by the Administrator, the Administrator shall modify, terminate,

or revoke such permit.  *Id.*

20.     If EPA fails to comply with a non-discretionary duty, such as acting on a petition

within the statutorily mandated timeframe, the Clean Air Act allows any person to bring suit to

compel EPA to perform its duty.  *See* 42 U.S.C. § 7604(a).

## VII.   <u>FACTUAL BACKGROUND</u>

21.     Schiller Station is a major stationary source of air pollution and is located in

Portsmouth, New Hampshire, just across the border from Maine.  The facility's operation

consists primarily of two coal-fired boilers and one biomass-fired boiler.

22.     On October 7, 2013, NH DES issued a proposed Title V renewal permit for

Schiller Station.  Sierra Club submitted detailed comments on November 6, 2013, during the

public comment period for the proposed permit.

23.     NH DES submitted Schiller Station's proposed Title V permit to EPA for review

in accordance with the Clean Air Act.  EPA's 45-day review period for the proposed permit

began on April 14, 2014, and ended on May 29, 2014.  EPA did not raise any objections to the

permit.

24.     On July 28, 2014, Sierra Club filed a petition requesting that the Administrator

object to the issuance of Schiller Station's Title V permit on the basis that the permit failed to:

- impose sufficiently stringent sulfur dioxide ($SO_2$) numerical emission limits;

- include proper averaging periods for its sulfur dioxide emission limits;

- include required emissions limits for particulate matter that is equal to or less than 2.5 micrometers in diameter ($PM_{2.5}$); and

- require adequate monitoring to assure compliance with particulate matter emissions limits.

The Petition was timely filed within 60 days following the conclusion of EPA's review period. 42 U.S.C. § 7661d(b)(2).

25.　　Sierra Club's Petition was based on objections that were raised with reasonable specificity during the public comment period for the proposed permit, in accordance with 42 U.S.C. § 7661d(b)(2).

26.　　EPA had 60 days, until September 26, 2014, to grant or deny Sierra Club's Petition.  42 U.S.C. § 7661d(b)(2).  As of the date of filing of this complaint, EPA has not yet granted or denied the Petition.

## VIII.  CLAIM FOR RELIEF

27.　　Sierra Club incorporates the allegations in all preceding paragraphs of this Complaint as if set forth in full herein.

28.　　The Administrator had a mandatory duty to grant or deny Sierra Club's Petition within 60 days after it was filed.  *See* 42 U.S.C. § 7661d(b)(2) ("The Administrator shall grant or deny such petition within 60 days after the petition is filed").

29.　　It has been more than 60 days since the Administrator received Sierra Club's Petition requesting that EPA object to the Title V Permit for Schiller Station.

30.　　As of date of filing this Complaint, the Administrator has not granted or denied Sierra Club's Petition.

31.     Therefore, the Administrator has violated and continues to violate the Clean Air Act, 42 U.S.C. § 7661d(b)(2).

32.     This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision.  42 U.S.C. § 7604(a).  EPA's violation is ongoing, and will continue unless remedied by this Court.

## IX.     REQUEST FOR RELIEF

WHEREFORE, Sierra Club respectfully requests that this Court enter judgment providing the following relief:

A)     A declaration that EPA has violated the Clean Air Act by failing to grant or deny Sierra Club's Petition requesting that EPA object to the Title V Permit for Schiller Station;

B)      An order compelling EPA to perform its mandatory duty to grant or deny Sierra Club's Petition for objection to the Title V Permit for Schiller Station, by an expeditious certain date;

C)     An order retaining jurisdiction over this matter until such time as EPA has complied with its non-discretionary duties under the Clean Air Act;

D)     An order awarding Sierra Club its costs of litigation, including reasonable attorneys' fees; and

E)     Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 18, 2014

   /s/ Zachary M. Fabish
Zachary M. Fabish
D.C. Bar No. 986127
The Sierra Club
50 F Street NW, 8th Floor
Washington, D.C. 20001
Tel.: (202) 675-7917
Fax: (202) 547-6009
zachary.fabish@sierraclub.org

Kathryn Amirpashaie
DC Bar Id. No. 1001491
Law Office of Kathryn M. Amirpashaie, PLC
7556 Blanford Court
Alexandria, VA  22315
Tel: (703) 851-9111
kmalawoffice@gmail.com

*Counsel for Plaintiff*