UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SIERRA CLUB,<br><br>  Plaintiff,<br><br>  v.<br><br>REGINA MCCARTHY,<br>ADMINISTRATOR, ENVIRONMENTAL<br>PROTECTION AGENCY,<br><br>  Defendant. | Case No. 1:14-cv-2149 (CRC) |

### OPINION AND ORDER

Timing is everything. And in this case, it is the only thing. The Clean Air Act gives the Environmental Protection Agency ("EPA") Administrator 60 days to grant or deny petitions requesting that EPA object to power plant operating permits. The Sierra Club has sued EPA Administrator Regina McCarthy for failing to meet that deadline with respect to its petition regarding Schiller Station, a power plant in Portsmouth, New Hampshire operated by Public Service Company of New Hampshire ("PSNH"). McCarthy has notified the Court that the parties are pursuing a settlement and have reached a tentative agreement. PSNH now moves to intervene in the case as a defendant, arguing that its presence is necessary because the existing parties will not adequately protect its interests in the content of the permit. The Sierra Club opposes intervention. Because this suit involves only the timing of EPA's decision on the Sierra Club's petition, PSNH's interests in the petition's substance do not satisfy this circuit's requirements for intervention. The Court will therefore deny PSNH's motion.

  **I.  Background**

Schiller Station is a power plant that operates, in part, by burning coal. PSNH's Reply at 2. Under the Clean Air Act ("CAA"), all major sources of air pollution, like Schiller Station, must

obtain a permit to operate.  42 U.S.C.A. § 7661a.  The EPA Administrator may approve state programs for issuing these permits, 42 U.S.C. § 7661a(d), and approved New Hampshire's in 2001, 40 C.F.R. § Pt. 70, App. A.  State permitting programs must submit individual permits to EPA for review, and EPA must object to any permit that fails to comply with all relevant CAA provisions.  42 U.S.C. § 7661d.  Permits become effective if the Administrator does not object to their issuance within 45 days of being notified of them, but any person may petition the Administrator within 60 days of the end of this review period to raise an objection.  42 U.S.C. § 7661d(b)(2).  These petitions do not delay the effectiveness of a permit, but the Administrator must grant or deny the petitions within 60 days.  Id.  If the Administrator fails to make a decision on a petition within that timeframe, a private citizen or group can bring suit to compel her to perform this non-discretionary duty.  42 U.S.C. § 7604(a).

As required, the New Hampshire Department of Environmental Services submitted a proposed permit for Schiller Station to EPA.  Pl.'s Mot. Summ. J. Ex. 4.  EPA raised no objections during the 45-day review period.  Decl. of Zachary M. Fabish, Staff Attorney for the Sierra Club ("Fabish Decl.") ¶ 6.  The Sierra Club filed a timely petition asking the Administrator to object.  Pl.'s Mot. Summ. J. Ex. 5.  EPA has yet to grant or deny the Sierra Club's petition, a decision which is now more than 180 days overdue.  Fabish Decl. ¶ 8.  The Sierra Club brought this action to compel EPA to act on its petition within a prescribed timeframe ordered by the Court, Compl. Request for Relief at B, and the parties report that they are nearing settlement of the case.  PSNH now brings this motion to intervene as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, for permissive intervention under Rule 24(b).

**II.     Standard of Review**

The Court must permit a party to intervene in a case if the party meets four requirements: (1) it filed a timely motion; (2) it has a legally protectable "'interest relating to the property or

transaction which is the subject of the action;'" (3) "'the disposition of the action may as a practical matter impair or impede [its] ability to protect that interest;'" and (4) that interest will not be adequately represented by existing parties. Fund For Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)). The legally protectable interest required by the second prong of this test must be "'of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment.'" Defenders of Wildlife v. Jackson, 284 F.R.D. 1, 6 (D.D.C. 2012), aff'd in part, appeal dismissed in part sub nom., Defenders of Wildlife v. Perciasepe, 714 F.3d 1317 (D.C. Cir. 2013) (quoting United States v. Am. Tel. & Tel. Co., 642 F.2d 1285, 1292 (D.C. Cir. 1980)). The D.C. Circuit also requires a party seeking to intervene as of right to establish Article III standing. Defenders of Wildlife, 714 F.3d at 1323 (citing In re Endangered Species Act ("ESA") Section 4 Deadline Litig., 704 F.3d 972, 976 (D.C. Cir. 2013); Jones v. Prince George's Cnty., 348 F.3d 1014, 1018–19 (D.C. Cir. 2003)). To do so, "an intervenor, like any party, must show (1) an injury-in-fact that is (a) concrete and particularized and (b) actual and imminent, (2) causation, and (3) redressability." In re ESA Section 4 Deadline Litig., 270 F.R.D. 1, 5 (D.D.C. 2010), aff'd, 704 F.3d 972 (D.C. Cir. 2013) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

      Federal Rule of Civil Procedure 24(b) grants the Court discretion to permit intervention by a party who "has a claim or defense that shares with the main action a common question of law or fact." In evaluating such motions, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights,'" Fed. R. Civ. P. 24(b)(3), and may also consider "'whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented.'" Ctr. for Biological Diversity v. EPA, 274 F.R.D. 305, 313 (D.D.C. 2011) (quoting Aristotle Int'l, Inc. v. NGP Software, Inc., 714 F. Supp. 2d 1, 18 (D.D.C. 2010)).

### III. Analysis

#### A. Intervention as of Right

PSNH argues that the Court must allow it to intervene as a matter of right because of its interest in "the validity and terms" of its permit. PSNH's Mot. to Intervene at 3–4. In PSNH's view, the "disposition of this action may lead to modifications and even revocation" of its permit, which in turn could affect Schiller Station's operations. Id. A number of recent cases in this circuit, however, have denied motions for intervention based on a finding that a suit over the timing of an agency determination had no effect on the movant's interest in the substance of the determination. See Defenders of Wildlife, 284 F.R.D. at 1, aff'd in part, appeal dismissed in part sub nom., Defenders of Wildlife, 714 F.3d at 1317; In re ESA Section 4 Deadline Litig., 270 F.R.D. at 1, aff'd, 704 F.3d at 972; Ctr. for Biological Diversity, 274 F.R.D. at 305. The holdings in these cases—that the prospective intervenors lack both standing and a legally protectable interest under Rule 24(a)—apply squarely to PSNH's motion here.

In In re ESA Section 4 Deadline Litigation, for example, a landowner sought to intervene in a case challenging the Fish and Wildlife Service's failure to timely determine whether to place a species of salamander on the endangered species list. 270 F.R.D. at 3. The court found that the landowner, on whose ranch much of the salamander population lived, lacked standing because his "alleged injury [was] based entirely on the potential substantive outcome of the . . . listing determination," while the only issue before the court—whether the agency had conducted its review "within the time period provided by law"—had no impact on the landowner's stated interest. Id. at 5. The same is true here. The Sierra Club's suit seeks only to enforce the statutory timetable for

EPA to act on its petition. It does not seek any relief regarding the validity or terms of PSNH's permit.[1]

PSNH nonetheless argues that it has an interest in the case because the Sierra Club filed suit in the hope that EPA would grant the petition. While PSNH is surely correct about the Sierra Club's motivation, it is "the intervening contingency of the [determination], rather than plaintiff['s] aspirations, [that] governs the imminence and causation inquiries here." Center for Biological Diversity, 274 F.R.D. at 311 n.7. In other words, PSNH's alleged injuries—the loss or alteration of its permit for Schiller Station—are entirely contingent on EPA deciding to grant the Sierra Club's petition, since a decision to deny it would maintain the status quo. As a result, PSNH lacks standing because "standing requires more than the *possibility* of potentially adverse regulation." Defenders of Wildlife, 714 F.3d at 1324–25 (emphasis added) (citing Nat'l Ass'n of Home Builders v. EPA, 667 F.3d 6, 13 (D.C. Cir. 2011); Alternative Research & Dev. Found. v. Veneman, 262 F.3d 406, 411 (D.C. Cir. 2001) (per curiam)). For the same reasons, PSNH has not established that its legally protectable interest for the purposes of Rule 24(a) is "'of such a direct and immediate character that" it "will either gain or lose by the direct legal operation and effect of the judgment." Defenders of Wildlife, 284 F.R.D. at 6 (quoting United States v. Am. Tel. and Tel. Co., 642 F.2d at 1292); see also In re ESA Section 4 Deadline Litig., 270 F.R.D. at 5 (finding that proposed intervenor failed to establish legally protectable interest for the same reasons it lacked standing); Ctr. for Biological Diversity, 274 F.R.D. at 312 (finding "much of the standing analysis" in

---

[1] PSNH attempts to distinguish the cases cited above by noting that they involve "motions to intervene filed by industry groups, not the permit holder concerning its own permit." PSNH's Reply at 6. Not so. In re ESA Section 4 Deadline Litigation involved an agency determination, like the one here, that ultimately could have affected the movant-intervenor's own land and business. Id. at 3. The distinction is without a difference in any event because the identity of the movant does not alter the principle of the relevant holdings: that suits solely about the timing of an agency's determination do not affect interests in the substance of the determination.

deciding a motion to intervene "also applies to the question of whether movants have a protectable interest in the outcome" of the litigation).

In response to this more recent caselaw, PSNH relies on a 1977 decision involving a proposed settlement agreement that required EPA to initiate rulemakings under the Federal Water Pollution Control Act Amendments of 1972 for certain pollutants according to a specific schedule. Natural Res. Def. Council v. Costle, 561 F.2d 904, 908 (D.C. Cir. 1977). The D.C. Circuit held in Costle that it is "not enough to deny intervention . . . because the applicants may vindicate their interests in some later, albeit more burdensome, litigation." Id. at 910. Costle does not apply here for at least two reasons. First, Costle "does not analyze the standing issue," which—as described above—spells defeat for PSNH's motion on its own. Defenders of Wildlife, 714 F.3d at 1325. Second, unlike Costle's consideration of a detailed proposed settlement agreement that would obligate EPA to proceed with a series of rulemakings, this case "offers [PSNH] no opportunity to effectively vindicate its [substantive] interests." In re ESA Section 4 Deadline Litig., 270 F.R.D. at 6–7 (rejecting Costle's applicability to a case purely about statutory deadlines). PSNH disagrees, arguing that the settlement in this case may well implicate its substantive interests. It points to an email exchange between EPA and environmental organizations during settlement discussions in a prior, First Circuit case in which PSNH sought to intervene. PSNH's Reply at 9–11. Specifically, PSNH alleges that the emails reveal that "one of the petitioners sought to expand proposed settlement terms to include substantive issues directly related to the draft permit's contents" by asking for regular briefings by EPA on the agency's progress toward making its determination. Id. But even if settlement discussions in another case in another court were relevant here, the Court

concludes that requesting progress reports on the agency's review of a petition relates to timing rather than the permit holder's substantive interests.

For all these reasons, the Court will deny PSNH's motion to intervene as of right.

### B. Permissive Intervention

PSNH also asks the Court to exercise its discretion to grant permissive intervention.[2]  Rule 24(b) requires the Court to consider "whether [permitting] the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Here, the original parties have "reached agreement on terms" for a settlement pending approval of the authorized representatives of their clients.  Agreed Mot. for Stay of Proceedings at 1.  By contrast, PSNH has expressed hostility to a settlement negotiated by the Sierra Club and EPA due to its concerns that such a settlement will ultimately lead to alterations in the permit's content.  PSNH's Reply at 8–11.  Because this litigation pertains to the timeline and not the substance of EPA's decision on the Sierra Club's petition, "the Court is unwilling to put [the movant] in a position to draw out ongoing settlement negotiations and to further delay the resolution of this case."  In re ESA Section 4 Deadline Litig., 270 F.R.D. at 6.  As a result, the Court will deny PSNH's request to intervene permissively under Rule 24(b).

---

[2] As a threshold matter, "there is uncertainty over whether standing is necessary for permissive intervention." In re Vitamins Antitrust Class Actions, 215 F.3d 26, 31 (D.C. Cir. 2000); see also Defenders of Wildlife v. Perciasepe, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (declining to reach the permissive intervention issue because the movant lacked standing). The Court need not resolve this uncertainty, however, because it finds that permitting PSNH to intervene would unduly delay resolution of this case. See Fed. R. Civ. P. 24(b).

## VI. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Public Service Company of New Hampshire's Motion to Intervene [Dkt. No. 8] is DENIED.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date:   March 17, 2015